FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG -9 AM 11:20

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HENRY DAVIS #403854 | CIVIL ACTION |
| VERSUS | NO. 04-1136 |
| N. BURL CAIN, WARDEN | SECTION "H" |

ORDER AND OPINION

Henry Davis's *pro se* petition for post-conviction relief pursuant to 28 U.S.C. §2254 was considered on memoranda. Upon review of the entire record, including the state court records, it is clear that the record is sufficient for the purpose of adjudicating petitioner's claims, that a federal evidentiary hearing is not necessary, and that the petition should be dismissed for the following reasons.

The state filed a bill of information charging Davis with one count of aggravated battery (La. Rev. Stat. 14:60). Following a trial by jury, he was convicted of that offense. The state judge sentenced Davis to a thirty year term of imprisonment at hard labor. Thereafter the state filed a bill of information charging petitioner as a fourth offender pursuant to La. Rev. Stat. 15:529.1. Following a hearing the state district judge adjudicated Davis to be a third offender, vacated the original sentence, and sentenced Davis to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.

___ Fee___
___ Process___
X Dktd___
✓ CtRmDep___
✓ Doc. No.___

The state court of appeals affirmed petitioner's conviction. *State v. Davis*, 701 So.2d 271 (Table), No. 95-2538 (La. App. 4th Cir. 10/22/97). The Louisiana Supreme Court denied petitioner's application for writs. *State v. Davis*, 816 So.2d 846 (La. 2002).

After his conviction became final, Davis filed a petition for *habeas corpus* relief in the state district court; the state district judge denied relief. *State v. Davis*, No. 97-3403 (24th Judicial District Court 11/7/02). Both the state court of appeals and the Louisiana Supreme Court denied petitioner's application for writs. *Davis v. Cain,* No. 02-1249 (La. App. 5th Cir. 12/20/02); *State ex rel Davis v. State*, 867 So.2d 678 (La. 2004).

Davis seeks to vacate his conviction, contending that the state failed to disclose that it offered a "deal" to Joseph Redding in exchange for his testimony, that counsel rendered ineffective assistance, and that the state judge improperly adjudicated him to be a habitual offender. Petitioner raised each of these claims in the state court proceedings described above. Accordingly, he has exhausted his available state remedies. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

TIMELINESS

The state asserts that petitioner is not entitled to relief because his claims are time-barred under 28 U.S.C. §2244(d). For the following reasons, the claims are not time-barred.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) amended 28 U.S.C. §2244 to establish a one-year limitation period for filing a federal *habeas corpus* motion. Title 28 U.S.C. §2244(d) provides in pertinent part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Under §2244 a petitioner has 365 days after his conviction becomes final to file a petition for federal *habeas corpus* relief, tolled only for the days on which a "properly filed" application for state *habeas* relief is pending. Petitioner's conviction became final on July 25, 2002, the last day on which he could have applied for a writ of *certiorari* to the United States Supreme Court, following the Louisiana Supreme Court's denial of his application for writs. *See Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999).

"The time during which a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation . . . ." 28 U.S.C. §2244(d)(2). An application for state post-conviction relief "is pending as long as the ordinary state collateral review process is 'in continuance' – i.e., 'until the completion of' that process." *Carey v. Saffold*, 536 U.S. 214, 219 - 20, 122 S.Ct. 2134, 2138, 153 L.Ed.2d 260 (2002). "In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Id.*; *see Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). However, an application ceases to

be "pending" when application to the next level of state-court review is not timely made. *Id.*

After his conviction became final, Davis permitted forty-three days of the 365 day limitation period to elapse before he filed a petition for state *habeas corpus* relief on September 7, 2002. The state district judge denied that petition on November 7, 2002. Pursuant to Rule 4-3 of Louisiana's Uniform Rules, Courts of Appeal, petitioner had thirty days within which to timely file an application for writs with the state court of appeals, absent being granted an extension of that period. Once a state limitation period expires "a petitioner is not entitled to further appellate review, and therefore, he has no application 'pending' in the state court." *Melancon v. Kaylo*, 259 F.3d at 407.

> A state court's subsequent decision to allow review may toll the time relating directly to the application, but it does not change the fact that the application was not pending prior to the application. Thus, after the appeal period has lapsed, an application ceases to be pending but a subsequent properly filed application entitles the petitioner to additional tolling beginning at the time of the 'proper' filing.

*Id.* Because Davis did not timely file his application for writs with the state court of appeals, nor request and receive an extension for filing his application for writs, his application ceased to be "pending" within the meaning of §2244 on December 9, 2002, the last date on which he could have timely sought review from the state court of appeals of the district judge's denial of his application. Petitioner allowed an additional nine days to elapse before he filed his application for writs to the state court of appeals. That application remained pending until it was denied by the state court of appeals on December 20, 2002. Petitioner then had until January 20, 2003, to file a timely application for writs with the Louisiana Supreme Court. Because Davis did not timely file his application for writs to the Louisiana Supreme Court, his application did not remain "pending" after

January 20, 2003, and the limitation period once again began to run. Davis allowed an additional ten days to elapse before he filed his application for writs with the Louisiana Supreme Court. That application remained pending until it was denied February 13, 2004. Petitioner allowed a total of sixty-two days (43 + 9 +10) of the limitation period to lapse between when his conviction became final and when the Louisiana Supreme Court denied his application for writs.

After the Louisiana Supreme Court denied Davis's application for writs, petitioner allowed sixty-eight days more of the limitation period to pass before he filed his motion for federal *habeas corpus* relief on April 21, 2004. Because petitioner allowed only 130 days (62 days + 68 days) of the 365 day limitation period to run before he filed this motion for post-conviction relief, the motion is timely.

FACTS

The state court of appeals summarized the facts as follows:

> On April 30, 1997, at approximately 2:30 a.m., three armed men entered the River Ridge apartment of Joseph Redding and Ronald Smith. Two of the men, Henry Davis and Derrick Howard, ordered Redding to get out of bed and get dressed, while the third man, Terrell Perkins, searched the apartment. Howard also got Redding's roommate, Ronald Smith, out of bed, brought him to the front room, instructed him to lie down on the floor and held a gun on him. In the meantime, Davis and Perkins questioned Redding about the location of drugs and money. When the three intruders did not find what they were looking for, they directed Redding to bring them to "where the

dope and money at." Hoping to escape once he was out of the apartment, Redding told the men that the drugs were in the trunk of his car. Perkins and Davis then took Redding and searched the trunk, but brought Redding back to his apartment when they did not find what they wanted. Redding then told the men that the drugs were in his neighbor's apartment.

Perkins and Davis accompanied Redding to the apartment of his neighbor, Patricia Berry. Redding knocked on Ms. Berry's door, telling her through the closed door that he needed to speak with her. When she opened the door slightly, the two men forced themselves into her apartment. When Redding asked Ms. Berry for drugs, she stated that she did not have any drugs and told the men to leave her apartment. Redding and Davis left Berry's apartment, but Perkins stayed behind. Davis brought Redding back upstairs to his apartment, where an argument ensued between the two men. Howard and Davis then took Redding and Smith downstairs at gunpoint and put them into Redding's car. Howard held the two men at gunpoint while Davis went to get his car. Redding escaped from the car, went to a neighbor's house and called the police. When Davis realized Redding was gone, he told Howard to get Perkins from Berry's apartment. The three men left in Davis' car, but shortly thereafter, were apprehended

by police. Redding and Smith were brought to the scene for a possible identification. Redding identified all three men but Smith was only able to identify Davis and Howard.

At trial, Mr. Redding testified that his girlfriend's stone ring, his Tommy Hilfiger watch, and his house and car keys were stolen from his apartment that night. The police recovered Mr. Redding's keys from the floorboard of Davis' vehicle.

Henry Davis, the only defendant to testify, told the jury that, in the early morning hours of April 30, 1997, he and his brother, Derrick Howard, and Terrell Perkins went to Redding's apartment to get Davis' money back for "bad drugs" that Redding had sold him earlier that day. Davis testified that they knocked on Redding's door and he let them into his apartment. He denied that he and his companions kicked in Redding's front door. Davis stated that none of them were armed with guns.

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) mandates that claims adjudicated on the merits in state court proceedings are subject to the following standards of review:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Drinkard v. Johnson*[1] the Fifth Circuit Court of Appeals analyzed the standards of review set out in §2254(d) and held that when reviewing questions of fact which were previously adjudicated on the merits by a state court, a federal court may grant habeas relief only "if the state court adjudication of the claim 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.'" *Id.* (citing 28 U.S.C. § 2254(d)(2)). As for questions of law, "a federal court may grant *habeas* relief only if it determines that a state court's decision rested on a legal determination that was contrary to . . . clearly established Federal law, as determined by the Supreme Court." *Id.* at 768. Where a mixed question of law and fact is being reviewed, "a federal court may grant *habeas* relief only if it determines that the state court decision rested on 'an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States,' to the facts of the case." *Id.* at 768 *(quoting* 28 U.S.C. § 2254(d)(1)). "[A] decision is contrary to clearly established Federal law 'if the state court arrives at a conclusion opposite to that reached [by the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court

---

[1]97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520 U.S.1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997), *overruled in part on other grounds, Lindh v. Murphy*, 521U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

has on a set of materially indistinguishable facts.'" *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000) (*quoting Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)). A writ may be granted based upon a state court's unreasonable application of federal law only "if the state court identifies the correct governing principle . . . but unreasonably applies the principle to the facts of the prisoner's case. " *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. at 409, 120 S.Ct. at 1521.

FALSE TESTIMONY

Petitioner seeks to vacate his conviction on the ground that the state improperly, knowingly relied on perjured testimony to obtain the conviction. Specifically Davis contends that Redding lied when he testified that he had not received a "deal" from the state in exchange for his testimony. Redding testified that he was in custody on an aggravated battery charge, that he had a theft charge pending, and that he had a prior conviction for possession of cocaine for which he had received a sentence of two years probation. Redding also testified that his probation officer had filed a rule to revoke his probation because of his arrest for aggravated battery, and that the District Attorney's office had not made any kind of deal with him with respect to any of the charges or the probation revocation pending against him.

It is well established that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173 (1959). To prevail on this claim, Davis must show that "(1) the testimony was false, (2) the state knew it was false, and (3) the testimony was material." *Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998).

The state court of appeals denied this claim on direct appeal, concluding that "there is no evidence in the record that the witness testified as part of a deal with the state." That finding of fact is presumed to be correct. 28 U.S.C. §2254(e)(1). Petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." *Id.* Davis has not produced any evidence which rebuts the presumption of correctness. Because Davis has not rebutted the presumption that the state court's finding that "there is no evidence . . . that the witness testified as part of a deal with the State" is correct, Davis has failed to establish that the challenged testimony is false. Therefore, the claim lacks merit.

INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner urges that trial counsel rendered ineffective assistance by failing to investigate, failing to cross-examine Joseph Redding concerning whether he entered into a "deal" with the state to testify, and failing to advise petitioner prior to the day trial started that he could be sentenced to a term of life imprisonment if he was convicted.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two prong test for evaluating claims of ineffective assistance of counsel: a defendant seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. With regard to the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. There is a strong presumption that an attorney's performance "falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. The defendant must overcome the presumption that the challenged action might be considered to be sound trial strategy. *Id.* (internal quotation and citation omitted).

In order to satisfy the prejudice requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. It is clear that even "professionally unreasonable" errors on the part of counsel do not warrant setting aside a conviction if the error had no effect on the proceeding. *Larsen v. Maggio*, 736 F.2d 215 (5th Cir. 1984).

The burden of demonstrating prejudice rests on the defendant. *Strickland v. Washington*, 466 U.S. at 693, 104 S.Ct. at 2067. The defendant must demonstrate that an alleged error actually had an adverse effect on the defense; that the "'might have beens' [at trial] would have been important enough to affect the proceedings' reliability." *Larsen v. Maggio*, 736 F.2d at 218. If the defendant makes an insufficient showing on either component of the ineffective assistance of counsel inquiry, it is not necessary to examine the remaining prong of the test. *Strickland v. Washington*, 466 U.S. at 697, 104 S.Ct. 2069.

Petitioner urges that his counsel rendered ineffective assistance by failing to take pictures of the victim's apartment door; he contends that the photographs would have shown that there was no damage to the door or frame, which would have pointed out to the jury the falsity of Ronald Smith's testimony that Davis and his co-defendants "kicked the door in." The state introduced into evidence photographs documenting damage to the door frame. There is no factual basis for this claim.

Additionally petitioner asserts that his counsel provided ineffective assistance because he failed to investigate the possibility that there were witnesses who could have testified favorably for the defense by controverting the facts testified to by the state's witnesses. Davis contends that he would not have had to testify in his own defense if his counsel had undertaken a proper investigation. This

claim also lacks merit.

Davis does not identify any of the witnesses he alleges his counsel should have located, nor does he provide any indication as to what favorable testimony such witnesses would have given. "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *United States v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005)(internal quotation and citation omitted).

Petitioner also challenges his counsel's failure to cross-examine Joseph Redding concerning whether he entered into a "deal" with the state in exchange for his testimony. Counsel's failure to undertake that inquiry on cross-examination does not constitute deficient performance. On direct examination, the prosecutor asked Redding "[h]as the D.A.'s office made any kind of deal with you at all with respect to any of your charges or the probation revocation of the case, the theft case, that's pending or the aggravated battery arrest or anything else?" Redding responded "[n]o, they haven't." Redding unequivocally denied the existence of a "deal" during his direct examination; there was no need for defense counsel to repeat the question absent evidence that Redding had not testified truthfully. As noted previously, petitioner offered no such evidence.

Davis asserts that his counsel rendered ineffective assistance by failing to advise him prior to the first day of trial that, if he was convicted, he could be sentenced as a multiple offender to a term of life imprisonment. Davis does not allege that had he been provided with that information earlier he would have elected to plead guilty. In fact, the record confirms that prior to the commencement of trial Davis rejected a plea agreement which provided for a sentencing range of twelve to fifteen years and an agreement by the state not to file a multiple offender bill. Davis has failed to demonstrate that he was prejudiced by counsel's alleged failure to advise him prior to the first day of trial that he faced the possibility of a life sentence if he was convicted.

## HABITUAL OFFENDER ADJUDICATION

The state district judge adjudicated petitioner to be a third felony offender based on a 1988 theft

conviction, a 1991 theft conviction, and the 1997 aggravated battery conviction. Petitioner seeks to vacate his multiple offender adjudication, contending that his 1988 theft conviction cannot be used as a predicate offense because it occurred outside the five-year cleansing period provided for in the habitual offender statute in effect in 1988. Petitioner also urges that the multiple offender adjudication is invalid because the state failed to introduce into evidence at the hearing any evidence "of a Boykin transcript, a minute entry or guilty plea form that petitioner was ever advised of his constitutional rights, or waives his rights in either prior guilty plea."

Davis is correct that in 1988, at the time he committed his first theft offense, La. Rev. Stat. 15:529.1 provided for a five-year "cleansing" period. However, contrary to his assertion, Louisiana law provides that the applicable cleansing period is the one in effect at the time of the commission of the offense for which the sentence is being enhanced. *State v. Everett*, 816 So.2d 1272, 1280 (La. 2002). At the time petitioner committed the 1997 aggravated battery, the crime for which the sentence is being enhanced, La. Rev. Stat. 15 §529.1C. provided in pertinent part:

> The current offense shall not be counted as, respectively, a second, third, or fourth, or higher offense if more than <u>ten years</u> have elapsed between the date of the commission of the current offense or offenses, and the expiration of the maximum sentence or sentences of each preceding conviction or convictions . . . alleged in the multiple offender bill and the date of the commission of the following offense or offenses.

(emphasis added). Clearly less than ten years elapsed between the 1988 theft conviction and the 1991 theft conviction and between the 1991 theft conviction and the 1997 aggravated battery conviction. Therefore, the state district judge properly relied upon the 1988 theft conviction in adjudicating petitioner to be a third felony offender.

Petitioner also seeks to invalidate his multiple offender adjudication on the ground that the state failed to introduce evidence that his prior guilty pleas were obtained in a manner consistent with *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The record indicates that at the multiple offender hearing Davis's counsel stipulated that:

> the record tendered to the court will reflect three prior felony convictions within the last ten years . . . a review of the documents also reflects that each of the three essential rights under Boykin were present on the plea form. We still do have some argument, Your Honor, but we can stipulate to that much which will save you from going through those.

Considering the stipulation, the claim lacks merit.

New Orleans, Louisiana this 8th day of August 2005.

UNITED STATES DISTRICT COURT